Good morning, Your Honor, and please, the Court. This case is about the state-of-the-art of what you could call distributed computing architecture in the mid-1990s. It's quite a while ago. It's an old patent. In fact, it just occurred to me that the patent expired during the pendency of this appeal. Nothing has to be looked at in the context of where things stood in the mid-1990s. I can remember being in a law firm where the librarian told me and advised everyone that the search engine to use for this new thing called the Internet was AltaVista because it had the most stuff on it and had cataloged the most pages. This is quite a while ago. In other words, before Google and before AltaVista bit the dust. Thank you for the compliment. I'm older than I look. Anyway, the state-of-the-art at that time, according to the primary reference being asserted against the patent here, included this MAGES reference. MAGES taught a way of restricting access to local data by, in other words, a local computer processor had access to local data only if a remote server sent a key or call it trigger data. I'm going to call it a key because it's simpler. Then, once the local had the key, it could get data. It would be held temporarily. There was a software routine that would run. It was called Key Catcher. If one embodiment, it could hold the key only in temporary memory called RAM. In another embodiment, it could store the key permanently, hard drive, non-volatile media, whatever you want to call it. The 534 patent at issue here came along and said, well, here's something different. We're going to structure the addresses and data on auxiliary, the thing attached to the local, so that it's encoded so it can be accessed only by the remote computer, only by the remote server, not by the local, until and unless the remote directs that it be accessed during the course of an online connected session. That's not the same as a key. I appreciate where you're going with this, but I think in the interest of time, can you just focus here? You're here challenging the board's decisions, so can we focus on where the error was and what the board concluded? Right. What the board has done is to say, I'm just setting that up, what the board has done is to say that you can replace that key of Meiji's with this command and address information that comes from the Bachelor reference. That command and address information can simply provide the direct access by the remote to the local auxiliary data without having to stop and be stored as a key in a software routine that's running. The problem with that combination is that you can't have it both ways. You cannot have the encoding of the local auxiliary data that's taught in the 534, if you're going to replace the whole key and software, catcher software of Meiji's with the simple address information of Bachelor. Bachelor teaches going and getting an elephant entry off a CD version of the Compton's Encyclopedia, for example. That's the example that's given in the Bachelor. There's no talk of encoding the local data in Bachelor. It's not even a computer system. It's a broadcast transmission. The elephant entry comes up alongside the program about elephants that the TV program, broadcast TV program, is presenting. Is this the argument? I've got page 19 of the board's opinion. Is this where you made this argument to the board, right? Their answer to you was, you're basing this all on a false premise. What they say is the combination does not replace the entire system of MAGI. The proposed combination is simple. It would have been obvious to a person skilled in the art to use the command and address information from Bachelor as the trigger data already included in MAGI. That was the board's response to the argument you're making to us today, right? Okay. No, you're pointing to a relevant portion of the decision, and the problem with that is that it completely destroys MAGI. MAGI is a system that leaves MAGI as nothing but a local computer and a remote computer. That's not a patent. That's not patentable. There's nothing left of MAGI at that point. And we cited the trivascular case and the Fischetti case. You're not supposed to completely eviscerate the primary reference with the secondary reference. Well, you could take portions of various references to combine them. If you just take one portion, you don't call it eviscerating the reference because you're only using one portion of it, right? But how can you have anything left of MAGI if you no longer have encoding and restricted access? Why do you care what's left of MAGI if you're simply looking at MAGI for what it teaches and you're plucking a piece out of what it teaches? Because the 534 does maintain the encoding and the restricted access. That's what made it an invention in the mid-1990s that was patentable over and above MAGI. And when you replace the key and catcher software of MAGI with the simple go-get command from Batchelor, you no longer have encoding. You can't have it both ways. You can't say that the key and catcher software are still there, giving you the encoding and the restricted access. And say, oh, well, now you're using just simple address information of MAGI. It's a chimera. It's a fantastical combination. 534 is what gave you that in the mid-1990s. The fantastical combination? Those two features, not the fantastical combination. The fantastical combination would be the Batchelor-specific command address information that was taught in Batchelor, combined somehow with the restricted access that was provided by the key and software that are no longer there once you replace it with the address of Batchelor. It was the 534 that gave you a way for the idea, and claims it quite specifically, that the local data are encoded to restrict access except by the local processor. So you've got a situation where you can have this as it's taught. I'm not saying it's claimed, but you have this continuously updating interactive 3D virtual environment, and as you move through it, the primary site data from the remote are being combined with the auxiliary data at the local. And this argument goes to which of the claims? To all of them, or does that exclude 23 and 24? This is specifically 23 and 24. It's most clearly expressed in 23 and 24. I understand that there was argument in the reexamination, and before the board this time, about whether those features were implicitly expressed in claim one, particularly in view of whatever arguments were made by the patent owner in the reexamination. But I would prefer to read them clearly in 23 and 24. It recites that the data are encoded to restrict access only while online connected, and only when directed by the remote server. Just to close up the point I was making, the specification of the 534, column 14, lines 33 to 40, points out that the advantage here is it ensures that the auxiliary data are usable only in conjunction with the primary or remote site data. So that's the invention, and you can't have it by combining MAGES and Batchelor in the way that the board has done here. Just to focus on the couple of limitations I just mentioned, the board effectively reads out the unless directed by the remote limitation from claim 24 by stating that claim 24 merely encompasses pages 24 to 25 of the written decision. It says claim 24 merely encompasses, but does not require access to the auxiliary to be directed by the remote. I'm sorry, claim 24 is distinct in that it recites that the data are encoded to restrict access unless directed by the remote. That's the thing that sets claim 24 apart from all the others, and it's something that was added during reexamination to make express what had been hashed out during the reexamination when discussing claim one. When does this patent expire? As I mentioned, I believe it expired during the pendency of the appeal. It was filed in 1997. Whether you look at it, and it issued in 2000. Whichever rule applies, I forget the cutoff date for the new rule. Well, you're into your rebuttal, so why don't you go to the other side. Good morning, and may it please the court. Substantial evidence supports the board's findings, and the board's conclusions should be affirmed. There's three topics I hope to touch on in my time today. One is claim construction. Second is the teachings of the prior art, madges and bachelor. And the third is the concept of analogous art and why the bachelor reference is analogous art. Did they challenge claim construction here? Well, that last discussion about claim 24 does kind of go to the notion of claim construction. There's no challenge on claim construction. That's exactly right, Your Honor. Both parties agreed with the board's claim construction below. And so there's some confusion on claim 24. My friend just now said that claim 24 that the board found, that it just encompasses and does not require this notion of direct access. And that's not true. What the board was saying, there's a couple of different concepts in claim 24. There's remote access limitations. The remote access limitations are also in claim 1 and claim 23 and claim 24. Claim 24 has an additional limitation, the directed by limitation. And what the board was saying, the board construed the remote access limitations that are in all three of those claims to include a situation where a remote server directs access by the local computer. So what the board did, the board did not define the outer boundary of that claim scope. The board was saying that that claim scope can be met by a circumstance where a remote server is directing access. Now, the directed by limitation in claim 24 is narrower. The board agreed with the appellant. The board pointed out that the patent owner below implies that the directed by limitation requires something beyond the remote access limitations. And this is appendix 24 in the final written decision. The board said it likely does. So the directed by limitation is, in fact, narrower than the remote access limitations. That's precisely what the board found. And the board found that the evidence on the record demonstrated that both of those limitations were met. So the broader remote access limitations were satisfied because the combination of MAGIS and Batchelor has the remote server directing access by the local computer. And then turning to claim 24, the narrower directed by limitation was also met by that evidence because, again, the circumstances there have the remote server directing access by the local computer. There is no claim construction error. And so the rest of this appeal is reviewing the record for substantial evidence. Turning to MAGIS and Batchelor, MAGIS is a hybrid online remote system. So some of the information is stored on a local CD so that it doesn't need to be sent across the network. Batchelor, what it adds, is it specifically teaches command and address information. So the remote data source is specifically commanding the local computer to go access information. If I understood what your present counsel was saying, he was saying that MAGIS has an encryption requirement as part of the disclosure and that once you take this trigger from Batchelor and put it into MAGIS, it's totally inconsistent with the encryption requirement. That's what I understood him to say. Could you help me understand that? I thought the primary reference here was Batchelor and that they were taking a feature from MAGIS and putting it into Batchelor rather than the other way around. No, it's the other way around, Your Honor. The primary reference is MAGIS. Okay. And so we're using all of MAGIS. The only thing that we're doing... So then he's saying that taking this feature from Batchelor is inconsistent with the encryption aspect of MAGIS, as I understand what he's saying, right? I think that's what he's saying, and that's not accurate, Your Honor. So what the combination is, is it's modifying MAGIS. MAGIS sends from the remote server, it sends a triggering key to the local computer. The combination adds to that by taking the specific command and address information. So in addition to the trigger, it's saying, local computer, you need to access this information on the local media, on the CD-ROM. And it's also telling the local computer, here's the address where you need to access it at. Batchelor had some specificity that just wasn't in the teachings of MAGIS, but nothing else has changed in MAGIS. The architecture of the local computer, the client-server relationship, everything else stays the same. Is this issue raised before about this inconsistency based on encryption? That sounded new to me on this appeal, Your Honor. I didn't remember seeing it in the board's decision of the briefs, but maybe I'm mistaken. Yeah, so the board pointed out on page 19 that all we're doing with this combination is adding this command and address information. And that's the extent of my recollection of how it came up below, Your Honor. And so taking the teachings of MAGIS and Batchelor, taking a step back and looking at Claim 24 as an example. Claim 24 is a useful claim to look at because it has the three limitations that have been at issue in this appeal. It has remote access limitations. And so what those involve is it's saying the remote server can access auxiliary site data, CD information, on the local computer. Now, that leaves open the possibility that the local computer can act on its own and could access the information on the CD without an instruction. And that's where the directed by limitation comes into play. So the directed by limitation cuts that off and says the remote server must direct access. Now, that leaves open an additional possibility. It leaves open the possibility that the local computer could receive that direction and then take no action for a while and wait until some time later and then use the command. And that's where the only while limitation comes into play in Claim 24. And that limitation is also in Claim 23. But that cuts off that possibility. It's saying you can't receive the key and hang on to it and use it sometime later. The combination of MAGIS and Batchelor teaches precisely this. So MAGIS teaches explicitly that the only way to access the data is a socket-to-socket connection between the personal computer and the remote server. MAGIS also teaches that once that key comes in, it uses the key immediately. It uses the key immediately to access the information that's stored on the local disk. So that's the combination of MAGIS and Batchelor. That's the teachings. And it reads on all three of those limitations, remote access, directed by, and the only while limitation. Finally, I'll just touch briefly on analogous art. And I'll just point out that the Board found below that Batchelor, the Batchelor reference, was both within the field of endeavor and also reasonably pertinent to the teachings of the 534 patent. The appellant has taken a hyper-narrow view of the field of endeavor and of the problem that was identified in the 534 patent. Those same arguments were considered by the Board below and were rejected. Substantial evidence supports the Board's finding as to each of those. On the field of endeavor, substantial evidence supports the Board because Batchelor is not limited to just broadcast television. Batchelor, if you look at the title, the written description, the claims, Batchelor involves a personal computer receiving information from a remote data source. And in Batchelor, that remote data source is also a computer. So Batchelor is within the field of endeavor. Substantial evidence on the record supports the Board's finding there. On the reasonably pertinent question, substantial evidence also supports that. So the appellant has taken a very narrow view and say that the problem that was addressed by the 534 patent involves this continually updating, seamlessly navigable environment. But if you look at what the 534 patent said about the problem that it was addressing, specifically at the 534 patent at column 3, lines 20 through 23, and that's appendix 345, the 534 patent says a significant problem associated with the use of such online technology, however, involves a substantial amount of time required to download various images and information. Now the Board found that the Batchelor reference was reasonably pertinent to that problem because Batchelor teaches storing some information locally and then a remote data source sending a command and address information to that local computer to access that information and pull it up on the screen. So in conclusion, Your Honor, the Board's findings are supported by substantial evidence and its conclusions should be affirmed. Thank you very much. Okay, so a couple of points. When your independent evaluation of the prior art asserted leads you to a different conclusion, I could cite dozens of cases on this. Synopsis 685, Federal Appendix 951, Rudolf Technologies, these are all just in the past year. 666, Federal Appendix 925, there are tons of them. So the question is, what does the art show? And when you combine it, do you get the invention? And I haven't heard anything to undermine what I said a few minutes ago. And by the way, what I said a few minutes ago is in our brief before the Board, I think it was suggested maybe the argument I was making was somehow new. No, it's not. You can look, for example, at the patent owner's response at pages 33 to 38, among other spots on 34 and other areas in the patent owner's response. But page 34, there's no disclosure in Batchelor that the entries were especially encoded or structured to be accessed by the broadcast transmitter in Batch. So we made the argument. The point about – Did you make that argument in your brief here, your opening brief? I apologize? Did you make that argument in your opening brief here? I believe so. Our opening brief is quite similar to our brief before the Board, in fact. So I would say yes. I can't give you the page number, but if you look at our discussion in Batchelor, I'm confident that it expresses the point about the fact that Batchelor type of information is not encoded. It's absolutely one of the primary distinctions we've been drawing all along here. And it's one of the reasons we cited the TriVascular and the Fischetti cases, because our argument was that it destroys MAGES, basically. There's nothing left of MAGES. This is all about restricting access and security and so forth. So let's see. I heard that MAGES is supposedly satisfied directed by the remote limitation and the only while online limitation because you have to establish a socket-to-socket connection in MAGES. Okay, you have to establish a socket-to-socket connection to obtain the key initially, but you're still obtaining a key. It's different than the online connection and the features of that online connection as taught and claimed in the 534. Similarly, using the key immediately is a possibility in MAGES. It's also possible that you store the key. It's also possible that you store the key temporarily. All those things are possible. That's not what the 534 teaches and claims, though. The board found that MAGES teaches the directed-by limitation of Claim 24 for the same reason that it teaches the remote access limitations of Claim 24. It's kind of striking because it states that one page after it says that the patent owner implies that the directed-by limitation requires something beyond the remote access limitation. And then the board says it likely does, as my adversary stated. Okay, well, if it does, then how can the same reason that it satisfies Limitation A, the remote access limitation, also satisfy Limitation B, the directed-by limitation? There's an explicit claim limitation here that is simply not accounted for in the board's decision, and they read it out of the claim. On the issue of non-analogous art, I think the arguments are clear in our brief, but if I could maybe jump to Claim 22 for a second. Well, we're out of time. Oh, are we? You exceeded your time. It's going up. It's not going down. I apologize. It's going up, not going down. We'll rest on our brief. Thank you. Thank you very much. We thank both sides. The case is submitted. That concludes our brief. Thank you. All rise. The Honorable Court has adjourned until tomorrow morning at 10 a.m.